IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-02248-WJM-KMT

MICHAEL SEXTON,

        Plaintiff,

v.

CITY OF COLORADO SPRINGS, *et al.*

        Defendants.

_____

**OBJECTION TO MAGISTRATE JUDGE'S ORDER [DOC. #22]
ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER FROM DISCOVERY**
_____

## 1. INTRODUCTION AND PROCEDURAL HISTORY

Defendants filed a Motion to Dismiss, seeking dismissal of some claims against some

Defendants and, in the process, invoked qualified immunity. [Doc. #16]. Contemporaneous with

that motion, Defendants filed a Motion For Protective Order, seeking to blanketly stay all

discovery as to all Defendants until the Motion to Dismiss is ruled on. [Doc. #17]. A mere three

business days after Plaintiff responded to Defendants' Motion For Protective Order, [Doc. #21],

the Magistrate Judge granted Defendants' motion and stayed all discovery as to all Defendants

until resolution of the Motion to Dismiss. [Doc. #22].

## 2. STANDARD OF REVIEW

The Order at issue, [Doc. #22], is a non-dispositive ruling. *See Davis v. Fed. Bureau of

Prisons*, Civil Action No. 15-cv-0884-WJM-MJW, 2018 U.S. Dist. LEXIS 31489, at \*2-3 (D.

Colo. Feb. 27, 2018). When reviewing an objection to a magistrate judge's non-dispositive

ruling, the Court may overturn the ruling if it is "clearly erroneous or contrary to law." Fed. R.

Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133

(D. Colo. 1996).  The "contrary to law" standard permits "plenary review as to matters of law,"

12 *Wright & Miller* § 3069, and the Court may overturn a magistrate judge's order if it applied

the wrong legal standard or applied the appropriate legal standard incorrectly. *Davis*, 2018 U.S.

Dist. LEXIS 31489, at \*2-3.

3. **ARGUMENT**

   3.1 **The Magistrate Judge's implementation of a *de facto* rule that the invocation of qualified immunity by *some* defendants must lead to a stay of discovery as to *all* defendants is a misapplication of the legal standard.**

   "It is well settled in this District that the invocation of qualified immunity is not a bar to

all discovery." *Kaufman v. Univ. of Colo. at Boulder*, Civil Action No. 15-cv-00406-LTB-NYW,

2015 U.S. Dist. LEXIS 106079, at \*5 (D. Colo. Aug. 12, 2015); *Estate of Bailey v. City of Colo.*

*Springs*, Civil Action No. 20-cv-1600-WJM-KMT, 2020 U.S. Dist. LEXIS 214552, at \*2 (D.

Colo. Nov. 17, 2020) (noting that "even when defendants raise the defense of qualified

immunity, courts within the District of Colorado generally disfavor a stay of all discovery");

*Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009); *Chavez v. Young Am. Ins. Co.*, No.

06-cv-02419-PSF-BNB, 2007 U.S. Dist. LEXIS 15054, at \*6 (D. Colo. Mar. 2, 2007); *Ruampant*

*v. Moynihan*, 2006 U.S. Dist. LEXIS 57304, at \*4-5 (D. Colo., Aug. 14, 2006).

   In a case like this one, "[a] blanket stay of discovery is unwarranted and unsupportable

under *Rome*." *Johnson v. Santini*, 2014 U.S. Dist. LEXIS 156700, at \*4 (D. Colo. Nov. 4, 2014)

(Boland, J.) (citing *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004)). While the Magistrate

Judge's order paid lip service to this precedent, she instead imposed her longstanding, *de facto*

rule that the invocation of qualified immunity by *some* defendants must lead to a stay of

discovery for *all* defendants. That the Magistrate Judge applied this *de facto* rule is demonstrated

by the history of her published decisions on Lexis, which show that she has granted every stay of

discovery that has been requested (in a case where at least one defendant invoked qualified

immunity) since mid-2012.[1] This streak of 40 published decisions proves that, in practice, the

Magistrate Judge has a *de facto* rule of staying all discovery upon the invocation of qualified

immunity.[2] It may have been arguable in the early 2010s that the Magistrate Judge was

exercising her discretion in granting stays in these cases, but it is clear that she is no longer doing

so.

The Magistrate Judge's *de facto* rule is contrary to Tenth Circuit precedent, which has

noted that a qualified immunity defense does not automatically bar all discovery. *See Currier v.

Doran*, 242 F.3d 905, 914, 916-17 (10th Cir. 2001) (although qualified immunity protects public

officials "from the costs associated with defending against lawsuits, particularly baseless ones, it

d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before

at least some discovery [is] conducted.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 591-

93, 593 n.14 (1998)). As the Tenth Circuit has stated, "[q]ualified immunity does not shield

government officials from all discovery but only discovery which is either avoidable or overly

broad. Discovery designed to flesh out the merits of plaintiff's claim before a ruling on the

immunity defense . . . would certainly fall within this category." *Garrett v. Stratman*, 254 F.3d

946, 953 (10th Cir. 2001) (quotations omitted).

---

[1] A search of Magistrate Judge Tafoya's decisions at the intersection of the terms "stay" &

"discovery" & "qualified immunity" (and filtered by Magistrate Judge Tafoya) on Lexis reveals

as much. Plaintiff's counsel is happy to provide a 56-decision-long string cite of such decisions,

should this Court request it.

[2] Of the total published decisions (60) on Lexis, the Magistrate Judge has granted a stay in 93%.

3

And, the Magistrate Judge's *de facto* rule is also contrary to precedent from multiple

District Court judges in this District, who have held that blanket stays on discovery are

inappropriate even if some individual defendants have invoked qualified immunity. That progeny

of caselaw stems from *Rome v. Romero*, 225 F.R.D. 640 (D. Colo. 2004). For example,

in *Moses-EL v. City and County of Denver*, Judge Krieger stated:

> Although the Court is mindful of the discussion in *Ashcroft v. Iqbal*, 556 U.S.
> 662, 684-85, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), regarding the necessity to
> shield the individual Defendants from the indirect burdens of discovery, this
> Court does not read that case to automatically entitle entities—who are not
> entitled to qualified immunity—to the same broad protection agaisnt
> [sic] discovery that individuals asserting qualified immunity have. This is
> particularly so as, here, Denver has not asserted that the Plaintiffs have even
> served any discovery requests yet, much less demonstrated that such requests
> unduly burden the individual Defendants. The Court can conceive of many topics
> of discovery that can be sought from Denver without implicating the individual
> Defendants' interests, including the identification and production of City policy
> statements, manuals, training materials, personnel records, correspondence and
> information not involving the individual Defendants, and information relating to
> comparable cases involving similarly-situated individuals. Accordingly, the Court
> cannot say that a wholesale, derivative stay of discovery against Denver is proper,
> and the Court overrules Denver's Objections. Denver may, of course, challenge
> the appropriateness of a specific discovery request if it believes that such a
> request compromises the individual Defendants' immunity from discovery (as
> discussed in *Iqbal*). But to the extent that Denver contends that it is automatically
> and completely entitled to piggyback on the individuals' immunities
> from discovery, the Court finds that argument without merit.

No. 17-cv-03018-MSK-MJW, [Doc. #93] (D. Colo. July 16, 2018); *see also see also Vaughn v.*

*Rhea*, Civil Action No. 04-cv-01002-MSK-CBS, 2006 U.S. Dist. LEXIS 24815, at *1 (D. Colo.

Apr. 12, 2006). And, Chief Judge Brimmer has noted that "qualified immunity does not provide

a broad protection against all discovery" in holding, on similar grounds to Judge Krieger in

*Moses-El*, that a magistrate judge properly denied a motion to stay based on the invocation of

qualified immunity. *Wanstall v. Armijo*, Civil Action No. 13-cv-02789-PAB-BNB, 2014 U.S.

Dist. LEXIS 130281, at *6-9 (D. Colo. Sep. 16, 2014).

Further, the enforcement of the Magistrate Judge' *de facto* rule is particularly troubling in this case. Only some Individual Defendants invoked qualified immunity on all claims, meaning that even if this Court were to grant the motion to dismiss in its entirety this case would proceed. *See* [Doc. #16]. And, even those that invoked qualified immunity did not do so as to whether the law was clearly established; they only contended that Plaintiff had not adequately plead a constitutional violation, making the motion to dismiss, in reality, a standard Fed. R. Civ. P. 12(b)(6) motion rather than one based on qualified immunity. *Id.*; *See* Chad Howell, *Qualified Discovery: How Ashcroft v. Iqbal Endangers Discovery when Civil Rights Plaintiffs File Suit Against Government Officials*, 21 GEO. MASON U. CIV. RTS. L.J. 299, 317 (Spring 2011) ("*Iqbal*'s dicta should be read as rejecting…discovery only in…cases" in which a motion to dismiss based on qualified immunity raises only legal questions, and "[i]f there are any issues of fact relating to qualified immunity, the district court should allow discovery."). Further, Plaintiff brought *Monell*, declaratory relief, and injunctive relief claims in this case and qualified immunity does not apply to those claims. *See Rome*, 225 F.R.D. at 644 ("First, the Court notes that the motion is made on behalf of all of the Defendants, including the Denver Police Department and the City and County of Denver. These two entities are not permitted to assert a defense of qualified immunity, and, therefore, are not entitled to a stay of discovery on the claims against them."); *Hulse v. Adams Cnty., Colorado*, No. 14-CV-02531-RM-NYW, 2015 U.S. Dist. LEXIS 49027, *3 (D. Colo. Apr. 14, 2015) ("Because the doctrine of qualified immunity is not applicable to Plaintiffs' municipal liability and official capacity claims and because the filing of a motion to dismiss does not by itself constitute 'good cause' to stay discovery, the court declines to exercise its discretion to stay discovery of Plaintiffs' municipal liability and official capacity claims.") (internal citations omitted). Ultimately, qualified immunity was asserted in the motion to dismiss as to roughly half of the claims in this lawsuit.

5

Instituting a blanket stay under these circumstances demonstrates the problematic nature of the

Magistrate Judge's *de facto* rule.

Finally, the public policy problems associated with the Magistrate Judge's *de facto* rule,

as to civil rights victims generally, are obvious: it deprives victims of their ability to effectively

vindicate their constitutional rights before memories fade, witnesses scatter, and documents are

lost. It also prevents just and speedy closure on one of the most traumatic and difficult

experiences of many plaintiffs' lives. And, the Magistrate Judge's *de facto* rule has also lead to

the perverse result that if you are brutalized in Colorado Springs, your case will delayed for

months or years, while if you are brutalized in Denver (or Grand Junction or Montrose) you can

prosecute your claims. Lawyers for civil rights violators in Colorado Springs understand that

filing a motion to stay is an easy, and certain, way to grind cases, even clearly meritorious cases

where *not all of the defendants invoke qualified immunity (or even move for dismissal)*, to a halt.

3.2 **The Magistrate Judge misapplied Supreme Court precedent.**

The Supreme Court of the United States has never addressed the propriety of granting a

stay of discovery while a motion to dismiss based on qualified immunity is pending. *See, e.g.*,

*Crawford-El*, 523 U.S. at 574 (rejecting a heightened burden on a plaintiff facing a summary

judgment motion based on a qualified immunity defense); *Behrens v. Pelletier*, 516 U.S. 299

(1996) (addressing the finality and jurisdiction over an appeal from a qualified immunity

decision); *Elder v. Holloway*, 510 U.S. 510 (1994) (addressing review of a qualified immunity

decision); *Siegert v. Gilley*, 500 U.S. 226 (1991) (holding the plaintiff failed to state a claim for a

constitutional violation); *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (addressing whether a ruling

on qualified immunity is immediately appealable and whether the lower court correctly decided

an issue of qualified immunity); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (establishing the

qualified immunity defense). However, the Magistrate Judge's ruling is written as though these

6

cases stand for the proposition that all discovery should be stayed upon invocation of qualified

immunity by some of the defendants.

The Magistrate Judge also misapplied *Iqbal* in her order. *Iqbal* does not stand for the idea

that *all discovery* for *all defendants* must be stayed while waiting for resolution of qualified

immunity. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). In *Iqbal*, the Supreme Court considered a

narrow question that did not address the type of stay required when an assertion of qualified

immunity is waiting to be resolved but rather plaintiff's request to relax the pleading

requirements under Rule 8. *Id.* at 684-86. In *dicta*, the Supreme Court emphasized its concern

with protecting officials from litigation through qualified immunity. *Id.* at 685. The *Iqbal* court

did not hold, nor imply, that discovery should be stayed every time an individual defendant

invokes qualified immunity, and certainly not blanketly stayed when only a few defendants

invoke qualified immunity. *See Crawford-El,* 523 U.S. at 585 (noting that "[t]here is, of course,

an important difference between the holding in a case and the reasoning that supports that

holding"). Instead, the Supreme Court acknowledged that qualified immunity is meant to protect

officials from "disruptive discovery." *Iqbal*, 556 U.S. at 685.

What is "disruptive discovery"? Well, in *Harlow*, the Supreme Court described

"disruptive discovery" as discovery that involves deposing numerous persons, including an

official's professional colleagues, and which would likely delve into traditionally protected

areas, such as deliberation preparatory to the formulation of government policy. 457 U.S. at 817,

n. 29. Clearly, this is not the type of discovery that is being sought in this simple, straightforward

Section 1983 case. And, even the "disruptive discovery" as invoked in *Iqbal* is clearly not at

issue here. The *Iqbal* court described "disruptive discovery" as discovery directed at government

officials who should not be distracted from the business of governing *during an unprecedented*

*international security crisis* by the need to participate in litigation:

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation . . . exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Id.* at 687.

The "disruptive discovery" outlined in *Iqbal* is, obviously, readily distinguishable from the situation here. No Defendant in this case is involved in "an international security emergency" and participating in depositions and document discovery inarguably will not be so burdensome as to prevent the operation of government, as was contemplated in *Iqbal*. *Id*. There is no crisis "unprecedented in the history of the American Republic" taking place in Colorado that prevents these Defendants from handling their discovery obligations. *Id*. Defendants are low-level police officers for Colorado Springs. They are not making national policy decisions. They are a far cry from the Secretary of Defense and burdening them with participation in litigation will not touch on the concerns outlined by the Court in *Iqbal*. Defendants' interests in seeking a stay in this case are nothing more than avoiding the burden all defendants almost invariably face when sued.

Finally, other courts, in this District and elsewhere, definitively hold that the Magistrate Judge's interpretation of *Iqbal*, and other precedent, is clearly erroneous. *Ronquillo v. City & Cnty. of Denver*, 2016 WL 10842586, at *3 (D. Colo. Nov. 14, 2016) (holding that "qualified immunity does not protect an official from *all* discovery, but only from that which is 'broad-reaching'") (quoting *Crawford-El*, 523 U.S. at 593, n.14 (emphasis in original)); *see also Saenz v. City of El Paso, Tex.*, 2015 U.S. Dist. LEXIS 102200, 2015 WL 4590309, at *2 (W.D. Tex. Jan. 26, 2015) (finding that neither "*Harlow* [nor] *Iqbal* . . . stand for the proposition that *all discovery* as to *all defendants* must be stayed pending a court's resolution of an assertion of qualified immunity" (emphasis in original)); *M.G. v. Metro. Interpreters & Translators, Inc.*,

2013 U.S. Dist. LEXIS 26328, 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (noting in response to *Iqbal* that "the Court is not convinced an automatic stay of all discovery is required in every case in which a defendant raises a claim of immunity. Rather, the Court should consider the nature of the case and the extent to which proceeding with discovery as to other parties likely would prejudice the stayed defendants, the impact on other parties and the court"); *Seeds of Peace Collective v. City of Pittsburgh*, No. 09-1275, 2010 U.S. Dist. LEXIS 76612, at *6-9 (W.D. Pa. July 28, 2010); *S.D. v. St. Johns Cty. Sch. Dist.*, No. 3:09-cv-250-J-20TEM, 2009 U.S. Dist. LEXIS 110198, at *3 (M.D. Fla. Nov. 24, 2009). The Magistrate Judge's order misapplied *Iqbal* (and Supreme Court precedent).

### 3.3 **The Magistrate Judge employed the wrong legal standard.**

Although Plaintiff is unaware of any Tenth Circuit case on-point, judges in this District have reflexively applied the test outlined in *String Cheese Incident, LLC v. Stylus Shows, Inc.* (hereinafter "*String Cheese*"), in determining whether to stay discovery. No. 05-cv-0193-LTB-PAC, 2006 U.S. Dist. LEXIS 97388, at *4 (D. Colo. Mar. 30, 2006). The *String Cheese* analysis, which has never been adopted by the Tenth Circuit, requires the moving party (in this case, Defendants) to establish that the balance of the following five interests tips in their favor: (1) Plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to Plaintiff of a delay; (2) the burden on Defendants in going forward; (3) the convenience to the Court; (4) the interests of persons not parties to this civil litigation; and (5) the public interest. *Id.*, at *4. The Magistrate Judge relied on these factors in granting a stay, however, this is the improper standard. The proper standard is the good cause standard articulated by Fed. R. Civ. P. 26(c).

The Federal Rules of Civil Procedure do not provide for a stay of proceedings while a motion to dismiss is pending. *See* Fed. R. Civ. P. 26(c); *Bitco Gen. Ins. Corp. v. Genex Constr.*

*LLC*, Civil Action No. 16-cv-1084-WJM-NYW, 2016 U.S. Dist. LEXIS 185941, at *2 (D. Colo.

Sep. 13, 2016). Therefore, "[t]he party who seeks a stay of discovery has the burden of

demonstrating good cause, and cannot sustain that burden by offering simply conclusory

statements." *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist. LEXIS 185941, at *3. Instead, the party must

demonstrate "particular and specific injury[,]"*SEC v. Dowdell*, 144 F. App'x 716, 723 n.2 (10th

Cir. 2005), through a "particular and specific demonstration of fact" in support of a request for a

stay. *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist. LEXIS 185941, at *3. Simply put, under the Fed. R.

Civ. P. 26(c) standard, "where a movant seeks relief that would delay court proceedings by other

litigants [it] must make a strong showing of necessity because the relief would severely affect the

rights of others." *Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d

1477, 1484 (10th Cir. 1983) (noting that "the right to proceed in court should not be denied

except under the most extreme circumstances").

Instead of holding Defendants to their burden under the good cause standard, the

Magistrate Judge allowed the mere invocation of qualified immunity (and generalized statements

of burden) by *some* defendants to entitle **all** defendants to a stay on **all** discovery. In their

motion, Defendants did not identify any particular burden that would be inflicted upon them by

continuing with discovery other than generally stating that they should not be subject to the

burden of typical discovery because of qualified immunity. [Doc. #17], pp. 6-7. "The ordinary

burdens with litigating a case do not constitute undue burden." *Lester v. Gene Express, Inc.*, No.

09-cv-02648-REB-KLM, 2010 U.S. Dist. LEXIS 25379, at *3 (D. Colo. Mar. 2, 2010).

Ultimately, these are the type of "[b]road allegations of harm, unsubstantiated by specific

examples or articulated reasoning, [that] do not satisfy the Rule 26(c) test." *Trinos v. Quality*

*Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008); *Estate of Bailey*, 2020 U.S. Dist.

LEXIS 214552, at *3-4 ("The Court understands that discovery may burden the officers involved

in this action and distract from their core professional responsibilities. However, this is always

the case for parties engaged in civil litigation, and Defendants have not established any

particularized facts suggesting that they will suffer a clearly defined and serious harm associated

with moving forward with discovery."). The Magistrate Judge employed the wrong legal

standard by failing to require that Defendants demonstrate good cause under Fed. R. Civ. P.

26(c).

### 3.4 **The Magistrate Judge employed the wrong legal standard by failing to perform a "preliminary peek."**

A vast swath of jurisdictions[3] (including courts in this jurisdiction)[4] employ the

---

[3] *See, e.g., Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988);

*Feldman*, 176 F.R.D. at 652; *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D.

Cal. 2000); *Ameris Bank v. Russack*, 2014 U.S. Dist. LEXIS 73460, 2014 WL 2465203 at *1

(S.D. Ga. 2014); *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 2008 U.S. Dist. LEXIS 80216,

2008 WL 4544470 at *1 (M.D. Ga. 2008); *Great W. Cas. Co. v. Firstfleet, Inc.*, No. CA 12-

00623-KD-N, 2013 U.S. Dist. LEXIS 92465, at *5 (S.D. Ala. July 2, 2013); *DRK Photo v.

McGraw-Hill Cos., Inc.*, No. CV 12-8093-PCT-PGR, 2012 U.S. Dist. LEXIS 168101, at *4 (D.

Ariz. Nov. 27, 2012); *Ceglia v. Zuckerberg*, No. 10-CV-569A(F), 2012 U.S. Dist. LEXIS 85633,

at *5 (W.D.N.Y. June 20, 2012); *Money v. Health*, No. 3:11-cv-00800-LRH-WGC, 2012 U.S.

Dist. LEXIS 49922, at *14-15 (D. Nev. Apr. 9, 2012).

[4] *Serv. First Permits, LLC v. Lightmaker Vancouver (Internet) Inc.*, No. 18-cv-02089, 2019 U.S.

Dist. LEXIS 1723, at *3 (D. Colo. Jan. 4, 2019); *Elec. Payment Sols. of Am., Inc.*, No. 14-cv-

02624, 2015 U.S. Dist. LEXIS 82724, at *1 (D. Colo. June 25, 2015); *Waisanen v. Terracon

Consultants, Inc.*, Civil Action No. 09-cv-01104-MSK-KMT, 2009 U.S. Dist. LEXIS 123427, at

"preliminary peek" approach, which is crucial to determining whether there is "good cause" for a discovery stay under Fed. R. Civ. P. 26(c), and this Court should follow these courts in holding that (prior to granting a discovery stay) the court must consider the likelihood of success of the pending motion to dismiss to dispose of the *entire* case. This Court has previously employed the "preliminary peek" approach in a Section 1983 case, where a motion to stay was premised on the invocation of qualified immunity, without calling it as much. *Estate of Bailey*, 2020 U.S. Dist. LEXIS 214552, at *2.

The benefits of the preliminary peek approach are that it "allows judges to refine their balancing in a way that allows them to minimize the risk of unnecessary costs and burdens in any particular case" when "discovery is unlikely to prove wasteful and any risk is outweighed by the harms associated with delay." Kevin J. Lynch, *When Staying Discovery Stays Justice: Analyzing Motions to Stay Discovery When a Motion to Dismiss is Pending*, 47 Wake Forest L. Rev. 71, 88 (2012).

The Magistrate Judge refused to consider whether the motion to dismiss would dispose of the entire action. And, without even looking at the merits of Defendants' motion to dismiss, clearly, Defendants' motion would not do that. *See* [Doc. #16]; *Feldman v. Flood*, 176 F.R.D. 651 (M.D. Fla. 1997) (holding stay of discovery not appropriate unless pending dispositive motion would dispose of entire action); *Sams v. Ga W. Gate, LLC*, No. CV415-282, 2016 U.S. Dist. LEXIS 75974, at *15 (S.D. Ga. June 10, 2016) ("Generally, a stay should be granted only where the motion to dismiss appears, upon preliminary review, 'to be clearly meritorious and truly case dispositive,' rendering discovery a mere futile exercise."). The Magistrate Judge's

---

*3 (D. Colo. Dec. 22, 2009); *Sanaah v. Howell*, Civil Action No. 08-cv-02117-REB-KLM, 2009 U.S. Dist. LEXIS 35260, at *2 (D. Colo. Apr. 9, 2009).

failure to take into account this important factor when determining whether there was "good

cause" under Fed. R. Civ. P. 26(c) is a separate basis for overturning her order as contrary to law.

3.5 **Should this Court find that the *String Cheese* factors are the controlling law, the Magistrate Judge misapplied the *String Cheese* factors.**

First, contrary to the Magistrate Judge's determination, Plaintiffs are substantially

prejudiced by a stay because "the memories of the parties and other witnesses may fade with the

passage of time, witnesses may relocate or become unavailable, or documents may become lost

or inadvertently destroyed." *Estate of Bailey*, 2020 U.S. Dist. LEXIS 214552, at *3. At best,

"[t]he first two factors cancel each other out as any burden on Defendants is countered by

Plaintiff's interest in proceeding with this litigation." *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist.

LEXIS 185941, at *4; *Yeiser*, 2019 U.S. Dist. LEXIS 129554, at *15; *JTS Choice Enters.*, 2012

U.S. Dist. LEXIS 25858, at *3.

Second, contrary to the Magistrate Judge's determination, the "convenience to the Court

weighs against granting the stay as cases that linger on the Court's docket are more difficult to

manage." *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist. LEXIS 185941, at *4; *Yeiser*, 2019 U.S. Dist.

LEXIS 129554, at *15; *JTS Choice Enters.*, 2012 U.S. Dist. LEXIS 25858, at *3; *Estate of*

*Bailey*, 2020 U.S. Dist. LEXIS 214552, at *4. This is particularly true in this Judge's courtroom

as your Honor "discourages litigation strategy or conduct that results in delaying the progress of

litigation, including the filing of motions for extensions of time, motions for continuances of

hearings, and dispositive motions generally." *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist. LEXIS

185941, at *4 (citing WJM Practice Standards §§ II.D, III.D, III.E.).

Third, the interests of third parties weigh against issuance of a stay. The Magistrate Judge

falsely stated that Plaintiff had not "identified any nonparty whose interests would be impacted

by the requested stay." On the contrary, Plaintiff noted that the taxpayers and citizens in

13

Colorado Springs have a strong interest "in learning as soon as possible whether [Plaintiff's]

allegations are true." [Doc. #21] (quoting *"V.S." v. Muhammad*, 2008 U.S. Dist. LEXIS 96099,

at *10 (E.D.N.Y. Nov. 24, 2008)).

Fourth, the public interest weighs against issuance of a stay. Without citing any authority,

the Magistrate Judge stated that the public interest favored a stay because of vague concerns

about "efficient and just resolution" of the case. However, the weight of authority, including

authority from this Court, holds that a stay is not an efficient use of judicial resources because of

the impact it has on a court's management of its docket. *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist.

LEXIS 185941, at *4 (holding that "the public has an interest in efficient use of public resources,

including Court resources… therefore weighs in favor a denying the stay"); *Yeiser*, 2019 U.S.

Dist. LEXIS 129554, at *15 (same); *JTS Choice Enters.*, 2012 U.S. Dist. LEXIS 25858, at *3

(same); *Estate of Bailey*, 2020 U.S. Dist. LEXIS 214552, at *4 (same). Indeed, if discovery were

stayed in every case qualified immunity is raised as a defense, courts would encounter extreme

difficulty in managing their dockets. *See Chavez*, 2007 U.S. Dist. LEXIS 15054, at *6-7 (stating

that general discovery deadlines set by the judge for all litigants "could not be met if cases

routinely [were] stayed while motions to dismiss [were] pending"). Delay is "of social concern"

because it "is cost prohibitive and threatens the credibility of the justice system." *Chavez*, 2007

U.S. Dist. LEXIS 15054, at *4-5.

> The relation between case disposition time and civil justice goals is straightforward. . . . . Delays in the resolution of civil disputes erode public confidence in the civil justice system, disappoint and frustrate those seeking compensation through the legal system, and generate benefits for those with the financial ability to withstand delays or otherwise benefit from them. Such factors, individually and collectively, undermine public faith and confidence in the ability of our civil justice system to operate efficiently and, more importantly, equitably.

Michael Heise Justice Delayed: *An Empirical Analysis of Civil Case Disposition Time*, 50 Cas.

W. Res. L. Rev. 813, 814 (2000).

14

And, resounding authority holds that "the public [has] an interest in assuring that institutions" such as Defendant Colorado Springs "[were] operating within the bounds of the law." *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 U.S. Dist. LEXIS 33935, at \*12-13 (D. Colo. Mar. 12, 2013). In other words, the public has the right to know whether Colorado Springs and the Individual Defendants are violating citizens' constitutional rights. *See A.A. v. Martinez,* Civil Action No. 12-cv-00732-WYD-KMT, 2012 U.S. Dist. LEXIS 96447, at \*14 (D. Colo. July 12, 2012) ("[T]he public interest is well served by prompt and efficient handling of litigation, particularly where the litigation involves allegations against public officials."). Because Plaintiff's allegations "call into question . . . the competence and good faith" of public entities, the interests of third parties and the public in in quickly discovering the veracity of Plaintiff's allegations weigh against granting a stay. *See "V.S."*, 2008 U.S. Dist. LEXIS 96099, at \*10. And, Plaintiff seeks injunctive relief, in the form of policy changes and training, which further tilts this factor in his favor. *See Estate of Reat v. Rodriguez*, No. 12-cv-02531-REB-MEH, 2013 U.S. Dist. LEXIS 14839, at \*13 (D. Colo. Feb. 4, 2013) ("[A]ny delay in the prosecution of this case affects not only the parties, but all persons who may benefit from the proposed polic[y] changes Plaintiff hope[s] to accomplish.").

4. **CONCLUSION**

This Court should overturn the Magistrate Judge's Order [Doc. #22].

DATED this 20th day of November 2020.

KILLMER, LANE & NEWMAN, LLP

*/s/ Andy McNulty*

Andy McNulty
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001

15

amcnulty@kln-law.com

ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that on this 20th day of November 2020 I filed a true and correct copy of the foregoing via CM/ECF which will generate emailed notice to the following:

Anne H. Turner
30 S. Nevada Ave., Ste 501
Colorado Springs, CO 80903
719-385-5909
Anne.turner@coloradsprings.gov

_s/ Jamie Akard_
Jamie Akard

16