IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-2248-WJM-KMT

MICHAEL SEXTON,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO, a municipality;
RAYMOND LINGLEY, in his individual and official capacity;
MARVIN FORBES, in his individual and official capacity;
WILLIAM GIANNINI, in his individual and official capacity;
PETER TOMITSCH, in his individual and official capacity;
SCOTT WISLER, in his individual and official capacity;
TRACY TOTH, in his individual and official capacity; and
ROBERTO WILLIAMSON, in his individual and official capacity,

    Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

This matter is before the Court on Defendants City of Colorado Springs, Colorado (the "City"), Raymond Lingley, Marvin Forbes, William Giannini, Peter Tomitsch, Scott Wisler, Tracy Toth, and Roberto Williamson's (collectively, "Defendants") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (ECF No. 16.) For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND

The following facts are taken from Plaintiff Michael Sexton's Complaint, which the Court assumes are true for the purpose of resolving the Motion. *See Ridge at Red*

*Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On January 30, 2019, Sexton observed two Colorado Springs Police Department ("CSPD") officers, Defendants Lingley and Forbes, performing traffic stops on two vehicles in downtown Colorado Springs. (ECF No. 1 ¶ 16.) Sexton began to film the officers. (*Id.*) As he filmed the officers, Sexton voiced his disapproval for their ticketing the individuals in the traffic stops. (*Id.* ¶¶ 17–21.)

Lingley called for assistance based on Sexton's comments, and Defendant Giannini arrived on the scene. (*Id.* ¶ 22.) Defendant Tomitsch arrived shortly after. (*Id.* ¶ 23.) Sexton stated, "Fuck the police" several times. (*Id.* ¶¶ 22–23, 26.) Defendants Williamson and Toth arrived on scene thereafter. (*Id.* ¶ 27.)

Giannini and Tomitsch arrested Sexton, asserting that saying the word "fuck" constituted disorderly conduct in violation of Colorado Revised Statute § 18-9-106.[1] (*Id.* ¶¶ 24, 28.) Giannini and Tomitsch searched Sexton's person, placed his possessions in a bag, handcuffed him, and placed him in a patrol car. (*Id.* ¶¶ 29–31.) At Defendant Wisler's direction, the officers transported Sexton to the CSPD station and issued him a citation for disorderly conduct. (*Id.* ¶¶ 31–33.) After approximately one year, shortly before trial on this charge, the charge against Sexton was dismissed for lack of probable cause. (*Id.* ¶ 37.)

Sexton initiated this action on July 30, 2020, asserting the following claims pursuant to 42 U.S.C. § 1983: (1) First Amendment free speech restriction against all Defendants; (2) First Amendment retaliation against all Defendants; (3) Fourth

---

[1] Colorado Revised Statute § 18-9-106 criminalizes the making of a "coarse and obviously offensive utterance, gesture, or display in a public place and the utterance, gesture, or display [that] tends to incite an immediate breach of peace."

Amendment unreasonable seizure against all Defendants; (4) Fourth Amendment unlawful search against Defendants Lingley, Forbes, Giannini, Tomitsch, Toth, and Williamson; and (5) Fourth Amendment malicious prosecution against all Defendants. (ECF No. 1 ¶¶ 70–138.)

Defendants filed their Motion on October 13, 2020, seeking dismissal of certain of Sexton's claims. (ECF No. 16.) Sexton responded on October 27, 2020, and Defendants replied on November 10, 2020. (ECF Nos. 20 & 23.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

Defendants seek dismissal of Sexton's official capacity claims, his First

Amendment overbreadth challenge to Colorado Revised Statute § 18-9-106(1)(a), his malicious prosecution claim against all Defendants, all claims against Lingley, Forbes, Toth, and Williamson, and all claims against the City.[2]  (ECF No. 16 at 2.)

**A.    Official Capacity Claims**

Defendants argue that the official capacity claims against them should be dismissed because, as employees of a municipality, suit is properly brought against the City, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (ECF No. 16 at 2.)  Sexton concedes that the official capacity claims against the individual Defendants are duplicative and that the City is the proper Defendant for the *Monell* challenge.  (ECF No. 20 at 8 n.9.)  Accordingly, the Motion is granted to the extent it seeks dismissal of the official capacity claims against the individual Defendants, and the official capacity claims are dismissed without prejudice.

**B.    Facial Challenge to Colo. Rev. Stat. § 18-9-106(1)(a)**

Defendants argue that, to the extent Sexton asserts a facial challenge to Colorado Revised Statute § 18-9-106(1)(a), such challenge fails because the Court has already determined that such statutory language is not unconstitutionally overbroad. (ECF No. 16 at 2–3.)  Specifically, they note the Court's decision in *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259 (D. Colo. 2018), which rejected a facial overbreadth challenge to a municipal ordinance identical to § 18-9-106(1)(a).  *Brandt*, 300 F. Supp. 3d at 1268–69.

In *Brandt*, the Court noted that the ordinance contained a limiting clause restricting liability to "fighting words," or those likely to cause an "immediate breach of

---

[2] Defendants do not appear to challenge Sexton's claims against Defendants Giannini, Tomitsch, and Wisler, nor the as-applied challenge to Colo. Rev. Stat. § 18-9-106(1)(a).

4

the peace." *Id.* at 1269.  Given this limitation, the Court concluded that the statute was not unconstitutionally overbroad.  *Id.*

In response, Sexton contends that the Court's decision in *Brandt* was erroneous because the Court relied heavily on *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942), which he asserts the Supreme Court has abrogated over the years since it was decided.  (ECF No. 20 at 13–16.)  He further states that no Supreme Court case since *Chaplinksy* has affirmed a conviction for criticizing a government official, suggesting that even criminalization of "fighting words" is impermissible.  (*Id.* at 15–16.)

Sexton fails to convincingly demonstrate that the Court's decision in *Brandt* was erroneous, particularly given that he does not cite any intervening case law since *Brandt* which would suggest that the analysis should be altered, or any Supreme Court case explicitly abrogating *Chaplinksy*.  The Motion is therefore granted as to this claim, and Sexton's Claim 1 is dismissed to the extent it asserts a facial overbreadth challenge to § 18-9-106(1)(a).  Because the Court has directly addressed this issue and determined that such a restriction is not impermissibly overbroad, the Court further finds that amendment would be futile, and dismisses the facial overbreadth claim with prejudice.

**C.     Failure to Intervene**

Sexton's claims against Lingley, Forbes, Toth, and Williamson are based on their failure to intervene to prevent the encroachment on his First Amendment rights, the allegedly unlawful search and seizure, and malicious prosecution.  (ECF No. 1 ¶¶ 30, 35, 80, 95, 130.)  Defendants assert that Lingley, Forbes, Toth, and Williamson are entitled to qualified immunity because Sexton has not plausibly alleged that they had

5

notice and the opportunity to intervene, nor the existence of a constitutional violation.[3]

To state a § 1983 claim based on failure to intervene, a plaintiff must allege that officers "observe[d] or ha[d] reason to know" that a constitutional violation occurred, and had a "realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). Moreover, officers' "mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers" is not sufficient to state a claim for failure to intervene. *Bark v. Chacon*, 504 F. App'x 741, 746 (10th Cir. 2012).

i. *Officer Lingley*

Sexton alleges that Lingley was performing a traffic stop when Sexton began criticizing the officers' activities. (ECF No. 1 ¶ 16.) Lingley then requested dispatch to send a patrol unit and continued to conduct the traffic stop. (*Id.* ¶¶ 17–18.) Sexton's Complaint contains no further mention of Lingley's involvement, and it is unclear whether Lingley even remained at the scene, or participated in any activities leading to Sexton's arrest, or was aware of the basis for the arrest.

Sexton argues that he adequately pleads Lingley's liability because Lingley's call for backup "set in motion the series of event[s] that led to [Sexton] being prosecuted for a year." (ECF No. 20 at 6.) Sexton does not address the unlawful search and seizure claims. (*See generally id.*)

Sexton's theory of liability as to Lingley is speculative, as his Complaint contains

---

[3] To overcome a defendant's assertion of qualified immunity, a plaintiff must show: (1) the defendant violated the plaintiff's federal constitutional or statutory rights, and (2) the right was clearly established at the time of the violation. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Accordingly, Sexton's failure to establish a constitutional violation would preclude him from overcoming a qualified immunity defense.

6

no facts suggesting that Lingley remained on scene, nor that he intended or expected for Sexton to be arrested for his statements. Moreover, Sexton does not allege that Lingley directed the officers to arrest or detain him upon their arrival.

As Sexton fails to plead facts supporting the inference that Lingley had any intention or expectation of Sexton's arrest based on his statements, or his subsequent prosecution, nor that Lingley even witnessed these events, he fails to state a claim for failure to intervene. *See Bark*, 504 F. App'x at 746. Defendants' Motion is therefore granted with respect to Lingley, and Sexton's claims against him are dismissed without prejudice.

    ii.    *Officers Forbes, Williamson, and Toth*

Defendants contend that Sexton cannot state a claim against Forbes, Williamson, and Toth because he does not allege that they witnessed the other officers searching and arresting him or knew that they were violating Sexton's constitutional rights. (ECF No. 16 at 5.) Because Sexton does not allege the officers' presence and awareness of any alleged violation, Defendants assert that Sexton fails to state a claim against them. (*Id.*)

Sexton argues that he adequately states a claim for failure to intervene against these officers because he alleges that they were at the scene at the time of his search and detention. (ECF No. 20 at 5.) He contends that their presence at the scene is sufficient to infer knowledge of an underlying constitutional violation and opportunity to intervene. (*Id.*) He further posits that whether an officer had knowledge of a constitutional violation or sufficient time to intervene is an issue of fact to be determined by a jury. (*Id.*)

7

The cases Sexton cites in support of these propositions are materially factually distinct, given that they involve the use of excessive force (which has not been alleged to be present here), and the officers sued either directed or otherwise participated in the use of force against the plaintiffs. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (finding adequate allegations supporting failure to intervene where officer directed and supervised arrest involving excessive force); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) (finding genuine issue of material fact as to failure to intervene where officer initiated use of excessive force by tackling plaintiff and then failed to prevent fellow officer from discharging a taser on plaintiff). Here, however, Sexton urges a significant and unsupportable logical leap from the officers' proximity to the scene, without more, to the inference that they watched his arrest, were aware of the grounds for the arrest, and as a consequence knew that it was unconstitutional.

Moreover, in *Brandt*, the Court addressed a similar set of facts, where officers cited the plaintiff for violation of an identical statute criminalizing disorderly conduct. *Brandt*, 300 F. Supp. 3d at 1274. The Court found that the arrest for violation of this statute did not impose upon the other officers "a duty to second-guess a clear statement of probable cause relayed by another officer." *Id.*

Given the tenuous assertion that the officers were on notice of a rights violation and had the opportunity to intervene, the Court is dubious that the law was clearly established such that a reasonable officer would be on notice that Sexton's search and seizure was unconstitutional and had a duty to intervene. The Court therefore grants the Motion with respect to Forbes, Williamson, and Toth, and the claims against them

8

are dismissed without prejudice.

**D.    Malicious Prosecution**

Sexton also asserts a claim for malicious prosecution based on his arrest and subsequent prosecution. (ECF No. 1 ¶¶ 123–38.) Defendants contend that Sexton cannot state a claim for malicious prosecution against the individual Defendants because he does not allege that Defendants caused his prosecution, or that they engaged in misrepresentation or concealment of facts. (ECF No. 16 at 5–7.) They therefore assert that they are entitled to qualified immunity on the malicious prosecution claim. (*Id.* at 5.)

The elements of a malicious prosecution claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Additionally, because "the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 [is] the Fourth Amendment's right to be free from unreasonable seizures," Sexton must establish that a qualifying Fourth Amendment seizure occurred in this case. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007).

Typically, a plaintiff may not sue a police officer for malicious prosecution pursuant to § 1983 because "the chain of causation is broken between the arrest and the actual prosecution." *Grobecker v. Grundy*, 2014 WL 3593513, at *8 (D. Colo. July 18, 2014) (quoting *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1207 (D. Colo. 2006)) (internal quotation marks omitted). An officer may be liable, however, if he

9

misrepresents or conceals facts from the prosecutor. *See id.*

Sexton fails to allege facts suggesting that the officers misrepresented or concealed any facts which led to his ultimate prosecution subsequent to his initial arrest. (*See generally* ECF No. 1.) Further, although Sexton relies on *Chavez-Torres v. City of Greeley*, 2015 WL 1850648 (D. Colo. Apr. 21, 2015) for the proposition that misrepresentation or concealment of facts is not required, this case is distinguishable. In *Chavez-Torres*, the court found the first element of his malicious prosecution claim satisfied because the plaintiff pled that the defendant officers "failed to provide full and complete information to the presiding judge who, in the absence of all the correct facts, made a determination that there was probable cause" supporting the plaintiff's arrest. *Chavez-Torres*, 2015 WL 1850648, at *4. Such allegation forms the required causal link between the officers' allegedly unlawful arrest and the subsequent prosecution, thereby satisfying the first element of a malicious prosecution claim. Sexton does not, however, allege facts connecting his arrest to the prosecution in this manner. Accordingly, he fails to satisfy the first element of a malicious prosecution claim.

As Sexton fails to plausibly allege facts satisfying the first element of a malicious prosecution claim against the officers, the Court need not address whether he states a claim for the remaining elements. Moreover, because Sexton has not alleged a constitutional violation based on malicious prosecution, the officers are entitled to qualified immunity on this claim. *See Reynolds*, 370 F.3d at 1030. The malicious prosecution claim against the individual Defendants in their individual capacities is therefore dismissed without prejudice.

**E.	Municipal Liability**

The City asserts that it is not subject to municipal liability for Sexton's claims because Sexton fails to identify a particular custom or policy underwriting any constitutional violation, or allege facts supporting a failure to train, supervise, or discipline employees. (ECF No. 16 at 7.)

   i.   *Policy or Custom*

Under *Monell*, a municipality may be liable under 42 U.S.C. § 1983 for damages where the entity's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." 436 U.S. at 694. To state a *Monell* claim, a plaintiff must allege: (1) the existence of a policy or custom; and (2) that the municipality intended the unconstitutional conduct to occur or was deliberately indifferent to the possibility that conformance with the custom of policy would result in unconstitutional conduct. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Sexton argues that he has alleged that the City has a widespread practice of arresting and retaliating against individuals for exercising their First Amendment rights, and maliciously prosecuting individuals without probable cause. (ECF No. 20 at 9.) Specifically, he alleges one other instance in which a CSPD officer issued him a citation, and four accusations by other individuals based on their criticism of the City.

11

(ECF No. 1 ¶¶ 64–69.)

District of Colorado courts have found that a plaintiff plausibly alleged municipal liability through the occurrence of similar arrest incidents over time. *See Estate of Valverde v. Dodge*, 2017 WL 3530282, at *4 (D. Colo. Aug. 17, 2017); *Arakji v. Hess*, 2015 WL 7755975, at *6 (D. Colo. Dec. 2, 2015) (finding allegations sufficient to state a claim for municipal liability where plaintiff alleged numerous occasions where law enforcement officers harassed him within a one-year period); *Sekerak v. City & Cnty. of Denver*, 1 F. Supp. 2d 1191, 1199 (D. Colo. 1998) (denying defendants summary judgment as to § 1983 claims against municipality where plaintiff alleged instances of retaliation against three other individuals based on exercise of First Amendment rights). Further, courts do not require a particular number of incidents, nor that all incidents occur with respect to the plaintiff. *Estate of Valverde*, 2017 WL 3530282, at *4 (finding three instances of officers' use of deadly force sufficient at pleading stage to plausibly demonstrate existence of informal custom or policy).

Sexton has alleged multiple incidents wherein CSPD officers harassed him or others in response to their assertions of dissatisfaction with the CSPD or the City. (ECF No. 1 ¶¶ 64–69.) Given that this action is at the pleading stage, the Court finds that Sexton has adequately alleged facts supporting the existence of a policy or custom sufficient to plead municipal liability. Additionally, courts have held that the existence of a widespread policy is sufficient to support the inference that a municipality was on notice of the rights violations, thereby satisfying the deliberate indifference prong of the municipal liability analysis. *See Trujillo v. City & Cnty. of Denver*, 2017 WL 1364691, at *7 (D. Colo. Apr. 14, 2017) (citing *McComb v. Ross*, 202 F. Supp. 3d 11, 18 (D.D.C.

2016)). Accordingly, the Motion is denied with respect to Sexton's claims against the City to the extent they are based on the theory of the existence of an informal custom or policy.

      ii.     *Failure to Train, Supervise, or Discipline*

Defendants assert that Sexton fails to state a claim for municipal liability based on the City's failure to train, supervise, or discipline its employees. (ECF No. 16 at 11–12.) Specifically, they contend that he alleges no facts concerning the officers' training or supervision and therefore cannot sustain a claim based on the deficiency of such training or supervision. (*Id.* at 11–12.)

Sexton alleges in conclusory manner that the City failed to train, supervise, or discipline the officers involved in his arrest. (ECF No. 1 ¶¶ 40, 46–47, 64.) Significantly, however, he does not respond to Defendants' argument that his allegations are insufficient to state a claim for municipal liability on this theory. (*See* ECF No. 20.) Finding that Sexton has conceded this argument—and considering the sparse and conclusory nature of his allegations with respect to the training, supervision, and discipline theory of liability—he has failed to plausibly state a claim for municipal liability on this theory. Defendants' Motion is therefore granted on this ground and his claims against the City are dismissed with prejudice to the extent they are based on the failure to train, supervise, or discipline.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendants Motion (ECF No. 16) is GRANTED IN PART and DENIED IN PART;

13

2. Sexton's official capacity claims against the individual Defendants are DISMISSED WITHOUT PREJUDICE;

3. Sexton's individual capacity claims against Lingley, Forbes, Williamson, and Toth are DISMISSED WITHOUT PREJUDICE;

4. Sexton's Claim 1 is DISMISSED WITH PREJUDICE to the extent it asserts a facial challenge to Colo. Rev. Stat. § 18-9-106(1)(a);

5. Sexton's malicious prosecution claim against individual Defendants is DISMISSED WITHOUT PREJUDICE;

6. Sexton's claims against the City are DISMISSED WITH PREJUDICE to the extent they are based on failure to train, supervise, or discipline;

7. The Motion is DENIED in all other respects;

8. The stay of discovery (ECF No. 22) is LIFTED; and

9. No later than **July 9, 2021**, the parties shall contact the chambers of United States Magistrate Judge Kathleen M. Tafoya to schedule a Status Conference, or such other proceeding as Judge Tafoya decides is appropriate in order to move this litigation forward.

Dated this 7th day of July, 2021.

BY THE COURT:

William J. Martinez
United States District Judge