**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2248-WJM-KMT

MICHAEL SEXTON,

     Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO, a municipality, *et al.*,

     Defendants.

---

**ORDER DENYING PLAINTIFF'S EARLY MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' EARLY MOTION FOR SUMMARY JUDGMENT**

---

     This matter is before the Court on Plaintiff Michael Sexton's Early Motion for

Partial Summary Judgment ("Plaintiff's Motion").  (ECF No. 32.)  Also before the Court is

Defendants City of Colorado Springs, Colorado (the "City"), William Giannini, Peter

Tomitsch, and Scott Wisler's (collectively, "Defendants") Early Motion for Summary

Judgment ("Defendants' Motion").  (ECF No. 44.)

     For the following reasons, the Court denies Plaintiff's Motion and grants in part

and denies in part Defendants' Motion.

## I. BACKGROUND[1]

At approximately 10:30 a.m. on January 30, 2019, Colorado Springs Police Department Officers Marvin Forbes and Raymond Lingley were conducting traffic enforcement on their motorcycles in downtown Colorado Springs, Colorado.  (ECF No. 44 at 2 ¶ 1.)  The Officers initiated traffic stops of two vehicles, and the motorists pulled their vehicles over on the north side of Bijou Street, adjacent to Acacia Park.  (*Id.* at 2–3 ¶¶ 2, 4.)

After observing the Officers initiate the traffic stops, Plaintiff—who was walking down the street adjacent to the stopped vehicles and was at least five feet from Officer Lingley—yelled, "Feel good about that?  Harassing and taxing?  These are innocent civilians."  (*Id.* at 3 ¶ 5[2].)  While Officer Forbes was at his motorcycle writing a citation, Plaintiff asked, "Doing your good deed for the day?  Huh?  Doing your good deed for the day?  You piece of shit."  (*Id.* ¶¶ 6–8.)

Officer Forbes twice ordered Plaintiff to "[s]tand over there" and stated that he would come talk to him in a minute.  (*Id.* ¶ 9.)  Nonetheless, Plaintiff refused to move, stating, "Nah, I'm going to stand right here.  I'm a [*sic*] stand right the fuck here."  (*Id.* ¶

---

[1] The following factual summary is based on the parties' briefs on the motions for summary judgment and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] In his response to Defendants' Statement of Material Facts, Plaintiff denies many of Defendants' statements, but he accompanies his denials with factual explanations that reference only a portion of Defendants' statements.  (*Compare* ECF No. 44 at 3 ¶ 5 *with* ECF No. 61 at 2 ¶ 5.)  To the extent that Plaintiff fails to explain why he denies other portions of Defendants' statements of material facts, those portions of Defendants' statements of material facts are deemed admitted.

10.)  Plaintiff then asked Officer Forbes numerous questions while Officer Forbes was

trying to write the ticket.  (*Id.* ¶ 11.)

Officer Forbes recorded the exchange in his police report as follows:

> [Plaintiff's] behavior, including screaming loudly and using
> profanities was highly disruptive to my traffic stop.  He stood
> at the curb line approximately 5 ft. from my position.  I asked
> him to stop yelling but he continued.  It was very difficult to
> perform my duties relating to the traffic stop, because I
> needed to keep very close watch of [Plaintiff].  I felt he was
> aggressive and could be dangerous.  During this time I felt I
> could not safely continue to write the traffic summons or
> recontact [the motorist].

(*Id.* at 4 ¶ 12.)

Likewise, Officer Lingley wrote in his police report that he "heard [Plaintiff] yelling

obscenities loud enough to cause Officer Forbes to break away from his traffic stop and

contact him" and that he "determined that neither Officer Forbes nor [he] could safely

continue with [their] traffic stop as [Plaintiff] was getting more and more agitated, so [he]

requested additional units from dispatch."  (*Id.* ¶ 13.)

According to Officer Tomitsch's police report, when he arrived on the scene, he

"immediately" heard Plaintiff "screaming loud profanities and holding what appeared to

be a cell phone that was capturing video of the incident"; that Plaintiff "appeared

extremely agitated and extremely confrontational with Officer Giannini and Officer

Forbes"; and that he observed "a medium-size crowd gathering in Acacia Park where

. . . approximately 10 to 15 people that were approximately 20 yards away [were]

watching the disturbance as it unfolded."  (*Id.* ¶¶ 14–16.)

Plaintiff contests the accuracy of Officers Forbes, Lingley, and Tomitsch's police

reports.  (ECF No. 61 at 2–3 ¶¶ 12–16.)

As shown on footage from the Officers' body worn cameras, the following exchange occurred:

> Officer Tomitsch [to Officer Forbes]: "What's he doing, exactly?"
>
> Plaintiff: "NO JUSTICE, . . ."
>
> Officer Tomitsch: "Is he interfering or . . . ?"
>
> Plaintiff: " . . . NO PEACE!  FUCK COLORADO SPRINGS POLICE!"
>
> . . .
>
> Officer Forbes [to Officer Tomitsch]: "He's standing there like that screaming at me, about that far away. . . .  So we were down here at, uh, Pikes Peak and Nevada, we're running radar, and so he's been standing there filming and that was, he was quiet at that point.  Uh, but then he observed us making traffic stops and then I guess he ran down here because he was down here pretty fast.  And then he just comes right up here and he's yelling and screaming."
>
> Officer Tomitsch: "Okay, so we got interference.  I mean, if we got him, let's hook him."
>
> Officer Forbes: "I mean, I'm fine with that.  I'm trying to do this, and he's—you know, he's standing on the edge of this curb and I'm trying to talk to the woman."
>
> Officer Tomitsch: "Right.  So, it's within five feet?  Okay."
>
> Plaintiff: "FUCK COLORADO SPRINGS TAXES POLICE!"
>
> Officer Forbes: "Yeah, and he's screaming like that."

(*Id.* ¶ 19.)

Officer Tomitsch told Plaintiff, "[W]e are going to ask you to stand over there.  If you don't, you're interfering and you're going to be placed under arrest."  (*Id.* ¶ 20.)

Officer Giannini likewise "attempted to inform [Plaintiff] that he is entitled to his [First]

Amendment right of freedom of speech, but that while expressing himself the use of profanity in public is prohibited by [the disorderly conduct statute]."  (ECF No. 32-1 at 3.) After reading Plaintiff the statute, Officer Giannini informed him that "he could stand on the sidewalk and yell his opinions of the police, but that using the word 'fuck' was against the law."  (*Id.*)  In response, Plaintiff again stated, "Fuck the police," and he claimed that the statute violates federal law.  (*Id.*)

Officer Giannini asked Plaintiff for his identification, which Plaintiff refused to provide.  (*Id.* ¶ 22.)  Officers Giannini and Tomitsch then arrested Plaintiff, placed him in handcuffs, and conducted a pat-down search of Plaintiff.  (*Id.* at 6 ¶¶ 23–24; ECF No. 61 at 4 ¶ 24.)  While searching Plaintiff, Officer Giannini told Plaintiff that he could say he does not like the police, but that "yelling the word 'fuck' is coarse or offensive language."  (ECF No. 61 at 6 ¶ 12.)

According to the Officers' body worn cameras, Officers Tomitsch and Giannini explained the basis for Plaintiff's arrest to the other officers at the scene as follows:

> Officer Tomitsch: "Forbes says he's interfering.  He's screaming at him while he's trying to do the job."
>
> Officer Giannini: "Yeah."
>
> Officer Tomitsch: "We have interference there.  He was warned several times.  He was asked to go.  He's using profanity, screaming."
>
> Officer Giannini: "No, I agree."
>
> Officer Tomitsch: "We got disorderly conduct and interference."
>
> Officer Giannini: "Yeah."

(ECF No. 44 at 6 ¶ 25.)

Likewise, when Sergeant Wisler arrived on scene, Officer Tomitsch stated:

> Officer Tomitsch: "He's been out here.  Forbes calls for back-up, says, 'Hey, the guy's harassing me while I'm trying to write this ticket.'  We get here, he's about five feet on the curb, yelling, screaming, filming, using curse words.  We asked him numerous times."
>
> Sergeant Wisler: "So, he's using profanity?"
>
> Officer Tomitsch: "Yes, numerous times.  I told him he's interfering two or three times.  He says, 'I'm not interfering.'  He starts to try to quote the law.  Giannini actually takes the summon--, or the computer out, looks it up and tells him, 'Here's the statute.'  This guy doesn't want to hear it.  We basically tell him, . . . 'Leave now. Vacate the area.'  And he's like, 'No, I fucking don't,' starts screaming again.  So, I said, now you're under arrest for interference."

(*Id.* at 6–7 ¶ 26.)  Sergeant Wisler further reported that he was told, *inter alia*, "that [Plaintiff] had interrupted a traffic stop by [Colorado Springs Police Department] Motor Officers in this same area" and that he "had repeatedly screamed the words 'Fuck the police' in the area."  (*Id.* at 7 ¶ 28.)

Officer Giannini drove Plaintiff to the Colorado Springs Police Department and served Plaintiff with a summons for disorderly conduct under Colorado Revised Statutes § 18-9-106(1)(a).[3]  (*Id.* ¶ 31; ECF No. 32 at 3 ¶ 13.)  Plaintiff contends that he was arrested for saying the word "fuck" in public.  (ECF No. 61 at 4 ¶¶ 25–27.)

Officer Giannini later testified to the following:

> Q: "So you arrested [Plaintiff] because he kept saying the word 'fuck,' right?"

---

[3] Colorado Revised Statutes § 18-9-106(1)(a) provides that "[a] person commits disorderly conduct if he or she intentionally, knowingly, or recklessly . . . [m]akes a coarse and obviously offensive utterance, gesture, or display in a public place and the utterance, gesture, or display tends to incite an immediate breach of the peace."

A: "Yes."

. . .

Q: "Did you see anyone breach the peace?"

A: "Yes."

Q: "Who?"

A: "I believe Mr. Sexton had."

Q: "Mr. Sexton breached the peace."

A: "Yes, sir."

Q: "By yelling."

A: "It wasn't the fact that he was yelling.  I informed him that he could yell.  It was that yelling the word 'fuck' as loud as he was, was the breach of the peace."

Q: "So yelling the word 'fuck' was both the coarse and offensive utterance and, also, the breach of the peace; is that right?"

A: "Correct."

Q: "You told Mr. Sexton that he could continue to express his displeasure with the police if he used different language, right?"

A: "The only word I asked him not to use was the word 'fuck.'"

Q: "So if he changed the content of his speech, he could continue to speak, right?"

A: "Yeah."

Q: "So because of the content of the speech, the word 'fuck,' you arrested him, right?"

. . .

> A: "It wasn't the content of it. It was just specifically the word 'fuck.' I told him he could stand there and yell about how he did not like the police."

(ECF No. 32-2 at 31, 34–35.)

Plaintiff filed this action on July 30, 2020. (ECF No. 1.) After the Court granted in part and denied in part Defendants' Motion to Dismiss (ECF No. 40)[4], the following claims remain: (1) First Amendment speech clause violation against Officers Giannini, Tomitsch, and Wisler (the "Individual Defendants") in their individual capacities and against the City; (2) an as-applied challenge to Colorado Revised Statutes § 18-9-106(1)(a) against the Individual Defendants in their individual capacities and against the City; (3) First Amendment retaliation against the Individual Defendants in their individual capacities and against the City; (4) Fourth Amendment unreasonable seizure against the Individual Defendants in their individual capacities and against the City; and (5) Fourth Amendment unlawful search against Officers Giannini and Tomitsch in their individual capacities.

On April 22, 2021, Plaintiff filed Plaintiff's Motion, which seeks summary judgment as to his First Amendment speech, First Amendment retaliation, Fourth Amendment unreasonable seizure, and unreasonable search claims against Officer Giannini.[5] (ECF No. 32.) Defendants responded on May 12, 2021 (ECF No. 34), and

---

[4] Specifically, the Court: (1) dismissed Plaintiff's official capacity claims against the Individual Defendants without prejudice, (2) dismissed Plaintiff's individual capacity claims against Officers Lingley, Forbes, Williamson, and Toth without prejudice, (3) dismissed Plaintiff's malicious prosecution claim against the Individual Defendants without prejudice, (4) dismissed Plaintiff's facial challenge to Colorado Revised Statutes § 18-9-106(1)(a) with prejudice, and (5) dismissed Plaintiff's claims against the City with prejudice to the extent they are based on failure to train, supervise, or discipline. (ECF No. 40.)

[5] The Court notes that Plaintiff filed his Motion before the Court granted in part and denied in part Defendants' Motion to Dismiss. (*See* ECF Nos. 32, 40.) Accordingly, the Court

Plaintiff replied on June 2, 2021 (ECF No. 38).  On June 24, 2021, Plaintiff filed a Notice of Supplemental Authority.  (ECF No. 39.)

On July 21, 2021, Defendants filed Defendants' Motion, in which they seek summary judgment as to the remaining claims in this action.  (ECF No. 44.)  Plaintiff responded on August 17, 2021 (ECF No. 61), and Defendants responded on September 14, 2021 (ECF No. 65).

Also on July 21, 2021, Defendants filed the Motion for Protective Order from Discovery and to Vacate Scheduling Order Deadline.  (ECF No. 45.)  On August 10, 2021, United States Magistrate Judge Kathleen M. Tafoya granted that motion and stayed discovery in this matter pending a ruling on Defendants' Motion.  (ECF No. 55.)

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.

---

will not address those portions of Plaintiffs' Motion addressing claims that have now been dismissed.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted).  If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  A party must support an assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"[C]onclusory and self-serving statements are insufficient to survive summary judgment."  *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)).  Likewise, "general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986).  Rather, "[t]o survive summary judgment, a nonmoving party must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which

he carries the burden of proof." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation marks omitted).  Moreover, this Court is not obliged to "comb the record" to identify factual disputes or make a party's case for it. *Ford*, 222 F.3d at 777.  Rather, "on a motion for summary judgment, *it is the responding party's burden* to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation marks omitted) (emphasis added).

### III. ANALYSIS[6]

**A.    Claims Against Individual Defendants**

   1.    <u>Qualified Immunity Standard</u>

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."  *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted).  "Once the qualified immunity defense is asserted," as the Defendants have done here, "the plaintiff bears a heavy two-part burden to show, first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the

---

[6] In the parties' briefs, they repeatedly attempt to incorporate by reference arguments and authorities cited in other filings.  However, the parties cite no authority that allows them to incorporate a party's prior motion into a later motion, nor is the Court aware of any such law. *See Wilson v. Pauling*, 457 F. Supp. 3d 965, 978 n.2 (D. Colo. 2020) (recognizing that Fed R. Civ. P. 10(c) only allows statements in a pleading to be adopted by reference in a motion and that "[n]o authority extends Rule 10(c) to incorporation of a party's prior motion into a later motion").  Accordingly, the parties are on notice that the Court will summarily strike any future motions that attempt to incorporate by reference portions of prior briefs.

conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).  "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A plaintiff must make this demonstration "on the facts alleged." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  And, because we are past the pleading phase at summary judgment, a plaintiff's factual recitation must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009); *see Scott v. Harris*, 550 U.S. 372, 377 (2007) (recognizing that the summary judgment stage, courts resolve questions of qualified immunity while construing the facts in the light most favorable to the non-movant).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted).  "A plaintiff need not show the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Id*. (internal quotation marks omitted).  But "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that

he was violating it." *City and Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Therefore, a plaintiff may not defeat qualified immunity "simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Nonetheless, the clearly established inquiry "involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Perea v. Baca,* 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citation omitted).

      2.    <u>Fourth Amendment Unreasonable Search & Seizure Claims</u>

Plaintiff asserts that Defendants violated the Fourth Amendment by arresting and searching him without probable cause to believe that he was committing any violation of law. (ECF No. 1 ¶¶ 101–122.) Plaintiff has moved for summary judgment as to his Fourth Amendment claims against Officer Giannini (ECF No. 32 at 9–10), and all Defendants have moved for summary judgment on these claims against Plaintiff (ECF No. 44 at 12–14).

A warrantless arrest comports with the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (internal quotation marks omitted). "Probable cause exists where the facts and circumstances within the

arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested."  *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986)); *see also Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the . . .  arrest is constitutionally reasonable.").

Courts assess "probable cause under an objective standard of reasonableness." *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015).  As a result, "an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime."  *Id.*  Moreover, "[a]n arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest."  *Id.* (quoting *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006)).

When the arresting officer asserts qualified immunity, the probable cause standard becomes even more deferential:

> [N]ot only must the plaintiff demonstrate that the officer arrested her without probable cause (that is, that he violated a constitutional right), but also that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances (that is, that the right was clearly established in the specific situation).

*Koch*, 660 F.3d at 1241.  "As a practical matter, [courts] implement this standard by asking whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity."  *Kaufman v. Higgs*, 697 F.3d 1297, 1300

(10th Cir. 2012); *see also Cortez v. McCauley*, 478 F.3d 1108, 1120 & n.15 (10th Cir. 2007) (en banc) ("[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity"); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007) ("[w]hen a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest").

Defendants argue that they had arguable probable cause to arrest Plaintiff for disorderly conduct in violation of Colorado Revised Statutes § 18-9-106(1)(a), for obstruction of a police officer in violation of Colorado Revised Statutes § 18-8-104(1)(a), for interference with a public official, in violation of Code of the City of Colorado Springs 2001 ("City Code"), as amended, § 9.3.101(B), and for failing to disperse, in violation of City Code § 9.2.103.  (ECF No. 34 at 11–12; ECF No. 44 at 13–14.)  According to Defendants, "Officer Giannini . . . reasonably could have believed Plaintiff's speech and conduct to be physically interfering with Officer Forbes'[s] performance of the traffic stop" and that Plaintiff failed to disperse when ordered to do so.  (ECF No. 34 at 13; *see also* ECF No. 44 at 12–14.)  They further contend that because they had probable cause to arrest Plaintiff, their search of Plaintiff incident to arrest was also lawful.  (ECF No. 34 at 14 (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)).)

In response, Plaintiff argues that Defendants lacked probable cause for his arrest because his "First Amendment-protected activity cannot form the basis for probable cause."  (ECF No. 32 at 9; ECF No. 61 at 13 (citing *Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010) ("It goes without saying that a government official may not base her

probable cause determination on an 'unjustifiable standard,' such as speech protected by the First Amendment.")).)  According to Plaintiff, "[b]ecause the undisputed facts show that [Officer] Giannini's only basis for his arrest of [Plaintiff] was First Amendment-protected activity, [Officer] Giannini arrested [Plaintiff] without probable cause to believe he had committed any crime and, therefore, violated his Fourth Amendment rights." (ECF No. 32 at 10.)

After carefully reviewing the record, the Court finds that Plaintiff has failed to overcome the deferential qualified immunity standard for Fourth Amendment claims. Critically, Plaintiff puts forward no evidence demonstrating that there was not arguable probable cause for any crime or that it would have been clear to a reasonable officer that probable cause was lacking under the specific circumstances and charges at issue here.  To the contrary, a reasonable officer could have arguably believed that probable cause existed to arrest Plaintiff given that his comments occurred while Officer Forbes was attempting to conduct a traffic stop and given that Plaintiff refused requests to move or provide his identification to law enforcement.  *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 462 n.11 (1987) (recognizing that "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection" (citing *Colten v. Kentucky,* 407 U.S. 104 (1972)); *see also Albright v. Rodriguez*, 51 F.3d 1531, 1539–40 (10th Cir. 1995) (concluding that a reasonable officer would not know that he violates the First Amendment by arresting a person who refuses to identify himself during a lawful investigative stop).  Accordingly, because Plaintiff has failed to demonstrate that a reasonable officer could not have believed that

16

probable cause existed to arrest Plaintiff, Defendants are entitled to qualified immunity on the Fourth Amendment unreasonable seizure claim.

Moreover, because Plaintiff has failed to demonstrate that Plaintiff's arrest lacked probable cause, Plaintiff has likewise failed to demonstrate that Defendants violated Plaintiff's Fourth Amendment right to be free from an unreasonable search when they patted Plaintiff down after he was arrested.  Officers Giannini and Tomitsch are therefore entitled to qualified immunity on Plaintiff's Fourth Amendment unreasonable search claim.

Accordingly, the Court grants summary judgment in favor of Officers Giannini and Tomitsch on Plaintiff's Fourth Amendment unreasonable search claim and in favor of the Individual Defendants on Plaintiff's unreasonable seizure claim.

3.    First Amendment Retaliation Claim

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment rights.  (ECF No. 1 ¶¶ 87–100.)  Plaintiff has moved for summary judgment on this claim against Officer Giannini (ECF No. 32 at 8–9), and all Defendants have moved for summary judgment on this claim against Plaintiff (ECF No. 44 at 10–12).

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  If an official takes adverse action against someone based on that forbidden motive, and "nonretaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment retaliation claim.  *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998)); *see also Worrell v. Henry,* 219 F.3d 1197, 1212

17

(10th Cir. 2000) ("[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." (citation and internal quotation marks omitted)).

When the alleged infringer is not the plaintiff's employer or a party to a contract with the plaintiff, courts looks to the following factors:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*Worrell*, 219 F.3d at 1212 (citation omitted).

As the Supreme Court has stated,

> [t]o prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.  Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal citations omitted); *see also Hartman*, 547 U.S. at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

The Supreme Court has further recognized the causal inquiry is particularly complex within the retaliatory arrest context "because protected speech is often a wholly legitimate consideration for officers when deciding whether to make an arrest."  *Nieves*,

139 S. Ct. at 1723–24 (quotation marks omitted).  Moreover, "because probable cause speaks to the objective reasonableness of an arrest, its absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite."  *Id.* at 1724 (internal citations omitted).  As such, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."  *Id.*  However, the Supreme Court has recognized an exception for a plaintiff who cannot plead and prove the absence of probable cause for an arrest:

> [a]lthough probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.  In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech."
>
> . . .
>
> For those reasons, we conclude that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.

*Id.* at 1727 (quoting *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1952 (2018)).

Citing *Nieves*, Defendants argue that Plaintiff's First Amendment retaliation claim must fail because probable cause supports Plaintiff's arrest and Plaintiff does not assert that that Defendants have not arrested an individual engaged in similarly obstructive speech.  (ECF No. 44 at 10–12.)

In response, Plaintiff argues, *inter alia*, that there is ample evidence that Defendants' actions were substantially motivated by his First Amendment protected activity; that Officer Giannini admitted that "he arrested Plaintiff simply because he used the word 'fuck' in public"; that Sergeant Wisler and Officer Tomitsch's police reports demonstrate that Plaintiff was arrested for repeatedly screaming profanities in public; and that the temporal proximity between Plaintiff's protected activity and Defendants' retaliatory actions is sufficient to show the casual connection necessary for a First Amendment retaliation claim.  (ECF No. 61 at 11–12.)  Moreover, according to Plaintiff, Defendants "are mistaken in their interpretation of *Nieves*" and asserts that the absence of probable cause is not an absolute requirement for a First Amendment retaliation claim and its presence is not an absolute defense.  (*Id.* at 13 (citing *Nieves*, 139 S. Ct. at 1734 (Gorsuch, J., concurrence in part)).)

As set forth in Part III.A.2, Plaintiff has failed to provide evidence that Defendants lacked probable cause when they arrested Plaintiff.  Nor does Plaintiff provide evidence demonstrating that he was arrested under circumstances in which similarly situated individuals who were not engaged in the same sort of protected speech would not have been arrested.  Therefore, under *Nieves*, Plaintiff's First Amendment retaliation claim must fail.  *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (affirming grant of summary judgment as to First Amendment retaliatory-arrest claim where officer had probable cause to arrest plaintiff and plaintiff did not argue that officers would forego arrests under his circumstances).

Accordingly, the Court grants summary judgment in favor of the Individual Defendants on this claim.

4.     <u>First Amendment Speech Claim</u>

Plaintiff moves for summary judgment on his First Amendment free speech claim against Giannini; Defendants move for summary judgment on this claim as to all remaining Defendants on the basis that qualified immunity bars the claims against the Individual Defendants.  (ECF No. 32 at 4–8; ECF No. 44 at 8–10.)

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  *Hill*, 482 U.S. at 461.  "Speech is often provocative and challenging . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."  *Id.* (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)).  In *Canon v. City & County of Denver*, the Tenth Circuit held that "fighting words" are epithets directed at the hearer, inherently likely to cause a violent reaction, and playing no role in the expression of ideas.  998 F.2d 867, 873 (10th Cir. 1993).

According to Defendants, "[t]he Officers witnessed and/or understood based on reliable information told to them by fellow officers that Plaintiff [was] loudly, provocatively, and incessantly yell[ing] at Officer Forbes, from a close distance, while Officer Forbes was actively conducting a traffic stop of a third party, interfering with his performance of his job duties."  (ECF No. 44 at 8.)  They further argue that Plaintiff intentionally inserted himself into the Officers' traffic stops and refused both Officer Forbes's and Officer Tomitsch's orders to move away from the traffic stops.  (*Id.* at 9.) As such, Defendants argue that Plaintiff's speech was not protected and that he has

failed to demonstrate both that Defendants violated his constitutional rights and that his rights are clearly established.  (*Id.* at 9, 14–15.)

Plaintiff argues that the Court should both deny Defendants' request for summary judgment and grant his request for summary judgment as to his claims against Officer Giannini because Plaintiff's speech did not include fighting words and was protected by the First Amendment.  (ECF No. 32 at 4–8; ECF No. 61 at 8–9.)  For support, he argues that he did not insert himself into Defendants' traffic stops, did not engage Defendants in conversation, and did not refuse orders to leave the area.  (ECF No. 61 at 10.) According to Plaintiff, he was engaged in "quintessential First Amendment protected activity" by "standing at a traditional public forum speaking out on a matter of public concern" and that the "application of [Colorado Revised Statutes § 18-9-106(1)(a)] to Plaintiff's speech was unconstitutional."  (*Id.* at 11–12.)

After carefully reviewing the record the parties' arguments, the Court finds there are genuine disputes of material fact that preclude any finding, at this phase of the litigation, that Defendants are entitled to summary judgment on Plaintiff's First Amendment claim and as-applied challenge to Colorado Revised Statutes § 18-9-106(1)(a).  *See Fisher v. City of Las Cruces*, 584 F.3d 888, 895–902 (10th Cir. 2009) (qualified immunity unavailable at summary judgment where the plaintiff's version of the facts, if believed, would constitute a violation of a clearly established right).

Under at least one view of the facts that a reasonable jury could adopt, Defendants' actions violated Plaintiff's clearly established constitutional rights by arresting Plaintiff for engaging in speech protected by the First Amendment.  *See Guffey v. Wyatt*, 18 F.3d 869, 872 (10th Cir. 1994) (recognizing that law enforcement

22

"may not exercise the awesome power at [his] disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment"); *see also United States v. McKinney*, 9 F. App'x 887, 890 (10th Cir. 2001) (concluding under totality of the circumstances of encounter that McKinney's telling the officer to "go f* * * [him]self" would not provoke the average person to retaliate).

After all, the record contains evidence from which a reasonable factfinder could conclude that Plaintiff was arrested based on the specific content—not the volume or the disruptive nature—of his speech.  As Officer Giannini testified, "[i]t wasn't the fact that he was yelling.  I informed him that he could yell.  It was that yelling the word 'fuck' as loud as he was, was the breach of the peace."  (ECF No. 32-2 at 34; *see also id.* at 34–35 ("Q: So if he changed the content of his speech, he could continue to speak, right?  A: Yeah. Q: So because of the content of the speech, the word 'fuck,' you arrested him, right?  A: It wasn't the content of it.  It was just specifically the word 'fuck.' . . .").)

There may be other interpretations that a jury could accept, some of which might entitle Defendants to qualified immunity and others which would not.  *See Guffey*, 18 F.3d at 872 (recognizing that the nature of a plaintiff's utterances may be critical to the constitutional analysis).  The Court's task on a motion for early summary judgment is to determine whether there is any genuine dispute of the material facts, the resolution of which would deprive Defendants of the defense of qualified immunity.  Here, such a set of facts exists, precluding the Court from ruling as a matter of law prior to trial that Defendants are immune from suit.  Summary judgment in favor of Defendants on

qualified immunity grounds is therefore inappropriate.[7]

However, the Court cannot conclude that Plaintiff is entitled to summary judgment at this stage of the litigation either.  A reasonable jury could also accept a view of the facts in which they conclude that Plaintiff's conduct, including the volume of his speech and his refusal to disperse from the area, was designed to divert Defendants' attention away from their official duties and hamper their ability to complete their traffic stops.  (*See* ECF No. 44 at 3 ¶¶ 9–11 (Plaintiff refused orders to move and continued to engage with Officer Forbes while Officer Forbes was trying to write a ticket); *see id.* at 4 ¶ 12 (Officer Forbes wrote in his police report that Plaintiff's "behavior, including screaming loudly and using profanities was highly disruptive to my traffic stop. . . .  During this time I felt I could not safely continue to write the traffic summons or recontact [the motorist]."); *see id.* ¶ 13 (Officer Lingley wrote in his police report that he "determined that neither Officer Forbes nor [he] could safely continue with [their] traffic stop as [Plaintiff] was getting more and more agitated").)  In such a scenario, it is possible that a reasonable jury could conclude Plaintiff's speech was not protected by the First Amendment.  See *Hill*, 482 U.S. at 462 n.11 (recognizing that an individual may be punished for "physically obstructing an officer's investigation" as a

---

[7] In coming to this conclusion, the Court notes that Plaintiff has not yet had an opportunity to conduct thorough discovery in this action, and, as a result, largely relies on Officer Giannini's testimony in Plaintiff's criminal case in El Paso County Court, *People v. Michael Sexton*, Case No. 19M1474.  (*See* ECF No. 32-2.)  In the Court's view, Plaintiff should be given an opportunity to muster evidence against all of the Defendants through discovery. However, the Court can envision scenarios in which Officer Tomitsch, Sergeant Wisler, and the City may be able to make a plausible argument for summary judgment after the conclusion of discovery.  Accordingly, Defendants' request for summary judgment is denied as to Officer Giannini and is denied without prejudice to refiling as to Officer Tomitsch, Sergeant Wisler, and the City.

result of "'contentious and abusive' speech" that "can interrupt an officer's investigation" (internal citations omitted)); *Colten*, 407 U.S. at 109 (recognizing that "[t]he State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction"); *King v. Ambs*, 519 F.3d 607, 614 (6th Cir. 2008) (affirming summary judgment where arrestee's act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party, and contravened township ordinance governing disorderly conduct).

Accordingly, the Court denies this portion of both Plaintiff's Motion and Defendants' Motion.

**B.     Municipal Liability Claims**

Defendants argue that "[b]ecause Plaintiff cannot prove a constitutional violation by any City employee . . . , he cannot prove a claim against the City." (ECF No. 44 at 15.)  In response, Plaintiff contends that summary judgment of his claims against the City is inappropriate because he has not had an opportunity to conduct discovery. (ECF No. 61 at 15–20.)

As explained in Part III.A.2 and III.A.3, Plaintiff has not provided evidence demonstrating that Defendants lacked probable cause to arrest him, or that Defendants retaliated against Plaintiff for the exercise of his First Amendment rights.  As such, the Court finds that Plaintiff has not provided evidence supporting either his Fourth Amendment unreasonable seizure claim or his First Amendment retaliation claim against the City.  *See Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104

(10th Cir. 2009) (recognizing that municipal liability will not attach "where there was no underlying constitutional violation by any of [the municipality's] officers").

The Court therefore grants summary judgment as to those claims against Defendant.  To the extent Defendants seek summary judgment as to the remainder of Plaintiff's claims against the City, Defendants' Motion is denied.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Plaintiff's Early Motion for Partial Summary Judgment (ECF No. 32) is DENIED;

2.    Defendants' Early Motion for Summary Judgment (ECF No. 44) is GRANTED IN PART and DENIED IN PART as follows:

a.    As set forth herein, Defendants' Early Motion for Summary Judgment is GRANTED as to Plaintiff's claims for First Amendment retaliation, Fourth Amendment unreasonable seizure, and Fourth Amendment unreasonable search;

b.    Defendants' Early Motion for Summary Judgment is DENIED as to Officer Giannini in all other respects;

c.    As Defendants other than Officer Giannini, their Early Motion for Summary Judgment is otherwise DENIED without prejudice;

d.    Defendants Tomitsch, Sergeant Wisler and the City ONLY may file a second motion for summary judgment: 1) on Plaintiff's remaining claims after the conclusion of discovery and prior to the dispositive motion deadline; and 2) to the extent remaining discovery materially alters the factual basis upon which a second such motion may be filed.

3.      At the conclusion of this action, Defendants will be entitled to judgment on the
        First Amendment retaliation, Fourth Amendment unreasonable seizure, and
        Fourth Amendment unreasonable search claims;

4.      The stay of discovery (ECF No. 55) is LIFTED; and

5.      No later than **January 24, 2022**, the parties shall contact the chambers of Judge
        Tafoya to schedule a Status Conference, or such other proceeding as Judge
        Tafoya decides is appropriate in order to move this litigation forward.

Dated this 19th day of January, 2022.

BY THE COURT:

William J. Martinez
United States District Judge